IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| REBECCA HUTCHMAN,<br><br>                *Plaintiff*,<br><br>v.<br><br>JUDGE KIM D. EATON, *et al*,<br><br>                *Defendants*. | Civil Action No. 2:25-cv-1136<br><br>Hon. William S. Stickman IV |

**MEMORANDUM OPINION**

WILLIAM S. STICKMAN IV, United States District Judge

On June 18, 2025, Plaintiff Rebecca Hutchman ("Hutchman") appeared *pro se* before the Honorable Kim D. Eaton ("Judge Eaton") of the Allegheny County Court of Common Pleas for a family court proceeding. (ECF No. 1, p. 5). David Etzi ("Etzi") was in the courtroom performing his functions as a tip staff for Judge Eaton. (*Id*.). Hutchman did not know Etzi was the son of Judge Eaton, and she opines that the concealed familial connection violated the integrity of the proceeding and denied her a fair hearing. (*Id*. at 5). She brought this *pro se* federal action under 42 U.S.C. § 1983 alleging that all of the named defendants violated her rights under the Fourteenth Amendment. (*Id*.). Judge Eaton and Etzi (collectively, "Judicial Defendants") filed a motion to dismiss (ECF No. 8), and Defendant Allegheny County also filed a motion to dismiss (ECF No. 19). For the following reasons, the Court will grant the motions.

                **I.**    **STANDARD OF REVIEW**

A motion to dismiss filed under Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). A plaintiff must allege sufficient facts that, if accepted as true, state a claim for relief plausible on

1

its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded factual allegations as true and view them in the light most favorable to a plaintiff. *See Doe v. Princeton Univ.*, 30 F.4th 335, 340 (3d Cir. 2022); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Although a court must accept the allegations in the complaint as true, it is "not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007) (citations omitted).

The "plausibility" standard required for a complaint to survive a motion to dismiss is not akin to a "probability" requirement but asks for more than sheer "possibility." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In other words, the complaint's factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations are true even if doubtful in fact. *Twombly*, 550 U.S. at 555. Facial plausibility is present when a plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Even if the complaint's well-pleaded facts lead to a plausible inference, that inference alone will not entitle a plaintiff to relief. *Id.* at 682. The complaint must support the inference with facts to plausibly justify that inferential leap. *Id.*

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972). In practice, this liberal pleading standard works as "an embellishment of the notice-pleading standard set forth in the Federal Rules of Civil Procedure." *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring). If a court can reasonably read the pleadings to state a valid claim on which a plaintiff could prevail, it should do so despite the plaintiff's failure to cite

proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364, 365 (1982); *United States ex rel. Montgomery v. Brierley*, 414 F.2d 552, 555 (3d Cir. 1969). "Pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

## II.  ANALYSIS

Hutchman has misconstrued the reach of § 1983 as to the defendants. For the reasons explained below, all claims against them will be dismissed.

### A. The official capacity claims against the Judicial Defendants will be dismissed.

The Court notes that the claims against the Judicial Defendants are, in fact, claims against the Allegheny County Court of Common Pleas, a state entity.[1] The judges and their chambers' staff are considered arms of the state. Because state entities are entitled to Eleventh Amendment immunity on such claims, judges and their staff are as well.[2] *See Benn v. First Judicial Dist. Of Pa.*, 426 F. 3d 233, 241 (3d Cir. 2005); *see also Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 551 F.3d 193, 198 (3d Cir. 2008); Pa. Const. art. V, § 1. Therefore, the Court will dismiss all claims against the Judicial Defendants in their official capacity.

---

[1] "All courts and agencies of the unified judicial system . . . are part of 'Commonwealth government' and thus are state rather than local agencies." *Callahan v. City of Philadelphia*, 207 F.3d 668, 672 (3d Cir. 2000) (citation omitted).

[2] "Immunity from suit in federal court under the Eleventh Amendment is designed to preserve the delicate and 'proper balance between the supremacy of federal law and the separate sovereignty of the States.'" *Karns v. Shanahan*, 879 F.3d 504, 512 (3d Cir. 2018) (quoting *Alden v. Maine*, 527 U.S. 706, 757 (1999)). It "serves two fundamental imperatives: safeguarding the dignity of the states and ensuring their financial solvency." *Id.* Thus, "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States." *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 73 (2000). Pennsylvania has not waived its Eleventh Amendment immunity. *See* 42 Pa. C.S.A. § 8521(b).

3

**B. The individual capacity claims against the Judicial Defendants will be dismissed as they are barred by the doctrine of absolute judicial immunity.**

There are two kinds of immunity under § 1983: qualified immunity and absolute immunity. *Yarris v. Cty. of Delaware*, 465 F.3d 129, 134-35 (3d Cir. 2006). Although most public officials are entitled to only qualified immunity, public officials who perform "special functions" are entitled to absolute immunity. *Id.* (quoting *Butz v. Economou*, 438 U.S. 478, 508 (1978)). "[A]bsolute immunity attaches to those who perform functions integral to the judicial process." *Williams v. Consovoy*, 453 F.3d 173, 178 (3d Cir. 2006) (citation omitted). "This immunity was and still is considered necessary 'to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation.'" *McArdle v. Tronetti*, 961 F.2d 1083, 1084 (3d Cir. 1992) (quoting *Butz*, 438 U.S. at 512).

Absolute judicial immunity shields Judge Eaton from any suit for monetary damages arising from her judicial acts. A judicial officer in the performance of her duties enjoys absolute immunity from suit. *Mireles v. Waco*, 502 U.S. 9, 12 (1991). Absolute judicial immunity applies to all claims, whether official-capacity or personal-capacity, that are based on judicial acts. *See Dongon v. Banar*, 363 F. App'x 153, 155 (3d Cir. 2010) ("[J]udges are entitled to absolute immunity from liability based on actions taken in their official judicial capacity.") (citing *Briscoe v. LaHue*, 460 U.S. 325, 334 (1983)). "A judge will not be deprived of immunity because the action [s]he took was in error, was done maliciously, or was in excess of [her] authority ...." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978). The immunity is not vitiated by "allegations of malice or corruption of motive." *Gromek v. Maenza*, 614 F. App'x 42, 45 (3d Cir. 2015) (quoting *Gallas v. Supreme Ct. of Pa.*, 211 F.3d 760, 768 (3d Cir. 2000)).

There are two exceptions to absolute judicial immunity: (1) "a judge is not immune from liability for nonjudicial actions" and (2) "a judge is not immune for actions, though judicial in

4

nature, taken in the complete absence of all jurisdiction." *Mireles*, 502 U.S. at 11-12. Neither exception applies here. All of the allegations against Judge Eaton focus on conduct that occurred during the course of the proceedings before her. She had jurisdiction to preside over those proceedings. Hutchman's allegations do not pertain to conduct or rulings that Judge Eaton undertook in her judicial capacity. Rather, she complains that Judge Eaton did not disclose that Etzi is her son. Their familial relationship does not negate Judge Eaton's judicial immunity. The existence of a familial relationship between Judge Eaton and a member of her staff is not one of the circumstances that can overcome judicial immunity. As such, all personal capacity claims against Judge Eaton will be dismissed.

As to Etzi, he is entitled to quasi-judicial immunity. Quasi-judicial immunity extends to court clerks, prothonotaries, and those who function at a judge's direction. *See Henig v. Odorioso,* 385 F.2d 491, 494 (3d Cir. 1967) (holding that judiciary employees executing judicial orders are immune from suit); *Marcedes v. Barrett*, 453 F.2d 391, 392 (3d Cir. 1971) (holding that judicial or quasi-judicial immunity applied to clerk of courts, a supervisor on the staff of the clerk of courts, an administrative assistant to the president judge, and a court reporter); *Davis v. Philadelphia Cnty.*, 195 F. Supp. 2d 686, 688 (E.D. Pa. 2002) ("[J]udicial or quasi-judicial immunity applies to court staff who are acting in their official capacities."). Hutchman alleges that Etzi was "performing official judicial duties, including swearing in witnesses, retrieving exhibits, and delivering orders." (ECF No. 1, p. 5). Because Etzi was part of Judge Eaton's staff and performing his duties at her direction, he is entitled to quasi-judicial immunity. As such, all personal capacity claims against Etzi will be dismissed.

The Court will dismiss with prejudice the claims against the Judicial Defendants as amendment would be futile.³ *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (a court may decide to deny leave to amend for reasons such as undue delay, bad faith, dilatory motive, prejudice, and futility).

**C. The claim against Allegheny County will be dismissed.**

A municipality or other local government may be liable under § 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such a deprivation. *See Monell v. Dep't of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978). Under § 1983, a local government is responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citation omitted). It is not vicariously liable under § 1983 for its employees' actions. Thus, Allegheny County may be held liable under § 1983 only when its policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. *See Monell*, 436 U.S. at 694. Within this framework, the United States Court of Appeals for the Third Circuit has clarified that there are three ways a municipality can be liable for the torts of its employees. *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005). "First, the municipality will be liable if its employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity; second, liability will attach when the individual has policy making authority rendering his or her behavior an act of official government policy; third, the municipality will be liable if an official with authority has ratified the unconstitutional actions of

---

³ "An amendment is futile if it merely restates the same facts as the original complaint in different terms, reasserts a claim on which the court previously ruled, fails to state a legal theory, or could not withstand a motion to dismiss." 3 James Wm. Moore et al., Moore's Federal Practice ¶ 15.15 (3d ed. 2024).

a subordinate, rendering such behavior official for liability purposes." *Id.* (internal citations omitted).

Hutchman cannot sue Allegheny County for the actions of a judge (and her tipstaff) presiding in the Allegheny County Court of Common Pleas. The Pennsylvania constitution provides for the vesting of the Commonwealth's judicial power in a "unified judicial system" which includes all of the courts in Pennsylvania. Pa. Const. art. V, § 1. It also provides that the Pennsylvania Supreme Court will exercise "general supervisory and administrative authority" over the unified judicial system. Pa. Const. art. V, §§ 1, 2, and 10. All courts and agencies of the unified judicial system, including the Allegheny County Court of Common Pleas, are part of "Commonwealth government" and thus are state rather than local agencies. *See* Pa. Const. art. V, § 6(c); 42 Pa. C.S. § 102; 42 Pa. C.S. § 301. Under Pennsylvania law, it is clear that the state, and not Allegheny County, has authority over the conduct of courts of common pleas. The judicial branch of the Pennsylvania government is not a person for § 1983 purposes, and judges of the Allegheny County Court of Common Pleas and their staff cannot act as a policymaker for Allegheny County.

Therefore, Hutchman has failed to bring a viable *Monell* claim against Allegheny County. The claim against Allegheny County will be dismissed with prejudice as the Court holds that amendment would be futile.

**D. The Court lacks jurisdiction under *Rooker-Feldman*.**

As a final point, the Court notes that it abstains from deciding cases which would result in "unprecedent intrusion into the [state] judicial system." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10 (1987). Recognizing the "importance to the States of enforcing the orders and judgments of their courts," the Supreme Court of the United States has counseled that a federal court must

7

"stay its hand," when the federal action challenges "the very process by which those judgments were obtained." *Id.* at 13–14; *see also Juidice v. Vail*, 430 U.S. 327, 335 (1977) (finding abstention appropriate in federal case challenging a state court order directing arrest and confinement of the plaintiff as a penalty for contempt of court because "[a] State's interest in the contempt process, through which it vindicates the regular operation of its judicial system ... is surely an important interest" warranting abstention).

To the extent Hutchman is complaining about injuries caused to her by state court orders in a family division proceeding, the *Rooker-Feldman* doctrine applies.[4] The harm alleged by Plaintiff—her alleged emotional injuries—flows directly from the orders issued by a judge of the Allegheny County Court of Common Pleas. Hutchman's allegations that Defendants violated her constitutional rights in the course of her family division proceedings, represents a clear and explicit invitation for this Court to "review and reject the state judgments." *Great W. Mining*, 615 F.3d at 166. The Court cannot do so. *See e.g., Middlebrook at Monmouth v. Liban*, 419 F. App'x 284, 285–86 (3rd Cir. 2011) (observing that federal courts "cannot review proceedings conducted by a state tribunal to determine whether it reached its result in accordance with law"). It is beyond the Court's purview to review those proceedings; it will not countenance Hutchman's attempts to have this Court review those proceedings by couching her claims as meritless § 1983 claims, which are inextricably intertwined with the state court's proceedings, to obtain federal jurisdiction.

---

[4] The *Rooker-Felder* doctrine only applies when "(1) the federal plaintiff lost in state court; (2) the plaintiff 'complains of injuries caused by the state-court judgments'; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments." *Great W. Mining & Min. Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

8

Hutchman also wants the Court to issue declaratory relief to address alleged violations of her rights during the state court proceedings. Not only can the Court not do so because declaratory relief is prospective, *see CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 628 (3d Cir. 2013), but this claim for relief is "inextricably intertwined" with the state court proceedings. It would require the Court to conclude that the state courts made an incorrect legal and/or factual determination and would effectively reverse the state decision and/or void its ruling. *See Desi's Pizza, Inc. v. Wilkes–Barre*, 321 F.3d 411, 421 (3d Cir. 2003) (explaining when a claim for relief in a federal action is "inextricably intertwined" with a state court action). This is exactly the type of determination that the *Rooker–Feldman* doctrine prohibits. Hutchman's request for declaratory relief is denied.

### III. CONCLUSION

For the foregoing reasons, Defendants' motions will be granted by Order of Court to follow.

BY THE COURT:

_____
WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

12/17/25
Date